# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

ANGELO HOWARD,

|  |  |  |
|---|---|---|
| Petitioner, | : | Case No. 1:12-cv-867 |
| - vs - |  | District Judge Michael R. Barrett |
|  |  | Magistrate Judge Michael R. Merz |
| WARDEN RHONDA RICHARD,<br>  Correctional Reception Center, |  |  |
|  | : |  |
| Respondent. |  |  |

# REPORT AND RECOMMENDATIONS

With the assistance of counsel, Petitioner Angelo Howard brought this action under 28 U.S.C. § 2254 to obtain relief from his conviction in the Hamilton County Common Pleas Court on charges of aggravated murder, aggravated robbery, having a weapon while under disability, aggravated burglary, and kidnapping, all with firearm specifications (Petition, Doc. No. 1, ¶ 5, PageID 1). He pleads the following grounds for relief:

> **Ground One:** Petitioner was deprived [of] a fair trial and due process when the trial court improperly [sic] joined multiple charges in one trial in violation of the 5th, 6th and 14th Amendments of the U.S. Constitution.
>
> **Supporting Facts:** The trial court improperly found that evidence of the Gina [sic] Booker incident would be admissible in the trial of the Tim Canady incident and joined these charges with the charges relating to the deaths of Kevin Redding and Kevin Johnson. The petitioner was substantially prejudiced [sic] by this joinder and was denied a fair trial.

1

**Ground Two:**   Petitioner was denied effective assistance of counsel when trial counsel failed to timely object to multiple violations by the State in violation of the 6th and 14th Amendments of the U.S. Constitution.

**Supporting Facts:**   Petitioner's trial counsel was ineffective for failing to properly and timely object [to] the State's Criminal Rule 16 violation, and the State's admission of the firearm.   This deficient performance prejudiced Petitioner, but for this deficient performance the outcome would have been different.

**Ground Three:**  Petitioner was denied due process and a fair trial when the trial court refused to conduct a reliability hearing and/or overruled his motion to exclude highly suspect testimony in violation of the 5th, 6th and 14th Amendments to the U.S. Constitution.

**Supporting Facts:**   The only evidence presented by the State against Petitioner was the testimony of Eugene and Carlos Jackson - two brothers who were highly compensated by the State in exchange for their testimony. The Petitioner moved for a reliability hearing and the trial court improperly overruled the motion and permitted the suspect testimony.

**Ground Four:**  Petitioner's rights to due process and a fair trial were violated when the trial court convicted him based on insufficient evidence in violation of the 5th and 14th Amendments to the U.S. Constitution.

**Supporting Facts**:   The trial court erred when it entered convictions against Petitioner for aggravated murder, aggravated robbery, aggravated burglary, kidnapping and having a weapon under disability without sufficient evidence. The charges involved both the death of Gino Booker (aggravated murder, aggravated robbery and having a weapon under disability) and the death of Timothy Canady (aggravated murder, aggravated robbery, two counts of aggravated burglary, two counts of kidnapping and having a weapon under disability).

**Ground Five:**   Petitioner was denied his constitutionally guaranteed right to be free from double jeopardy under the 5th Amendment when he was convicted of multiple counts of aggravated murder, aggravated robbery and kidnapping.

**Supporting Facts**:  The State used the same alleged conduct of Petitioner to prove the aggravated robbery and the aggravated murder of Gino Booker. Furthermore, the State used the same alleged conduct to prove the aggravated murder, aggravated robbery, and kidnapping of Tim Canady.

(Petition, Doc. No. 1, PageID 5-17.)


## Procedural History


The Hamilton County Grand Jury indicted Petitioner Angelo Howard in Case No. B-0703493 for offenses related to the deaths of Gino Booker and Tim Canady and in case No. B-0806325 with offenses related to the deaths of Kevin Johnson and Kevin Redding.  Over Howard's objection, these two cases were joined for trial.  Howard's motion to exclude the testimony of Eugene Jackson, Andre Thomas, and Harold Thomas or to hold a "reliability" hearing on these witnesses was denied (Entry, Return of Writ, Doc. No. 8-1, PageID 138.)

The jury convicted Howard of all counts and specifications relating to the deaths of Booker and Canady, and all offenses relating to the death of Redding, but acquitted him of the offenses related to the death of Johnson.  Howard appealed to the First District Court of Appeals which reversed for insufficient evidence the convictions relating to the death of Redding but otherwise affirmed (except for reversing the award of court costs).  *State v. Howard*, 2011-Ohio-2862, 2011 Ohio App. LEXIS 2442 (1st Dist. June 15, 2011).  The Supreme Court of Ohio declined to exercise jurisdiction over a subsequent appeal.  *State v. Howard,* 130 Ohio St. 3d 1418 (2011).  The instant habeas corpus petition followed.

# Analysis

**Ground One:  Improper Joinder**

In his First Ground for Relief, Howard asserts the charges against him were improperly joined for trial.  Respondent asserts this claim is procedurally defaulted by Howard's failure to renew his objection at trial and in any event is without merit (Return of Writ, Doc. No. 13, PageID 64-70).  Howard rejoins that the court of appeals decided the procedural default question incorrectly under Ohio law, that failure to renew the objections was ineffective assistance of trial counsel, and that Howard is entitled to relief on the merits of this claim.

**Procedural Default**

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir.); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not

complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Howard raised improper joinder as his first assignment of error on direct appeal and the court of appeals decided the assignment as follows:

[**P13**] In his first assignment of error, Howard argues that the trial court erred in allowing the joinder for trial of all charges in the cases numbered B-070493A and B-0806325A. The state had filed a pretrial motion to join all charges in these indictments. The trial court granted the state's motion over Howard's objections.

[**P14**] Generally, a trial court's decision to join offenses for trial is reviewed for an abuse of discretion. *State v. Torres* (1981), 66 Ohio St. 2d 340, 343, 421 N.E. 2d 1288. But here, although Howard properly objected to the state's pretrial motion for joinder, he failed to renew that objection at any point during the trial. Howard's failure to renew his objection resulted in the waiver of any issue concerning joinder. *State v. Robertson,* 1st Dist. Nos. C-070151 and C-070159, 2008 Ohio 2562, ¶ 11. But because the issue is relevant to Howard's tenth assignment of error regarding ineffective assistance of counsel, we hold that even if Howard had preserved his objection, the trial court did not commit an abuse of discretion in allowing joinder.

[**P15**] Crim.R. 8(A) governs joinder of offenses. It states that "[t]wo or more offenses may be charged in the same indictment * * *[if they] are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." And Crim.R. 13 governs joinder of indictments. It provides that "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information." Joinder is the rule rather than the exception, and it is favored by the law. *State v. Franklin* (1991), 62 Ohio St. 3d 118, 122, 580 N.E. 2d 1.

6

[*P16] Howard bears the burden of demonstrating that he was prejudiced by the joinder of these offenses. *State v. Torres, supra*, 66 Ohio St. 2d at 343. Howard has asserted that joinder was inappropriate and prejudicial because, under Evid.R. 404(B), evidence of the crimes stemming from each criminal incident would not have been admissible in a separate trial for the crimes stemming from a separate criminal incident. Once a defendant has asserted a claim of prejudice, the state may rebut the alleged prejudice in two ways. *State v. Franklin, supra*, 62 Ohio St. 3d at 122. First, the state may demonstrate that the evidence presented for each offense joined was simple and direct. *Id.* Or the state may rely on the "other acts" test to rebut prejudice. Under this test, offenses are properly joined when the state would have been permitted to introduce evidence of one offense in the trial of another. The state need only demonstrate that joinder was appropriate under one of these tests. *Id.*

[*P17] Here, we are persuaded that under Crim.R. 8(A) the offenses were properly joined for trial because each offense was of a same or similar character and was part of a course of criminal conduct. All crimes stemmed from Howard and his accomplices' plan to rob known drug dealers at gunpoint and then to sell the drugs obtained in the robberies for profit. Admittedly, the crimes against each victim were not identical, and each contained their own distinguishing characteristics. But the various offenses were committed in a sufficiently similar manner and were so clearly part of a course of criminal conduct that it was appropriate to join them for trial.

[*P18] We further conclude that the state has countered Howard's claim of prejudice by demonstrating that each offense in the joined indictments was proved by simple and direct evidence. The murder and associated crimes against each victim occurred at different times and places. Each was supported by evidence independent from the others. The law is clear that "the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated." *State v. Torres, supra*, 66 Ohio St. 2d at 343. Although this case involved numerous offenses and an abundance of evidence, it relied on the type of uncomplicated and simple evidence that was capable of being segregated. In fact, the jury's acquittal of Howard on all offenses relating to Kevin Johnson demonstrates that the jury was capable of, and did, separate the evidence relating to each offense.

[*P19] The trial court did not abuse its discretion in joining all offenses in one trial. The first assignment of error is overruled.

*State v. Howard*, 2011-Ohio-2862, ¶¶ 13-19, 2011 Ohio App. LEXIS 2442 (1st Dist. June 15, 2011) (hereinafter "*Howard, supra.*, ¶___").

In applying the *Maupin* test, a federal habeas court must first determine whether there is an applicable state rule.  Here, the First District held there was a rule requiring that the objection to joinder be renewed at trial.  *Howard, supra*, ¶ 14, citing their own prior precedent at *State v. Robertson,* 1st Dist. Nos. C-070151 and C-070159, 2008 Ohio 2562, ¶ 11.  Other Ohio courts have enforced the same rule.  *See State v. Morales*, 2004-Ohio-3391, 2004 Ohio App. LEXIS 3027 (10th Dist. June 29, 2004); State v. Scott, 2003-Ohio-2797, 2003 Ohio App. LEXIS 2517 (6th Dist. May 30, 2003).

Howard argues that there is no such rule because "both Respondent and the state court of appeals overlooked Ohio Criminal Rule 51 which states:  "An exception, at any stage or step of the case or matter, is unnecessary to lay a foundation for review, whenever a matter has been called to the attention of the court by objection, motion, or otherwise, and the court has ruled thereon."  Howard's counsel, Sarah M. Schregardus, was admitted to practice in Ohio in 2006[1], so the use of the word "exception" in the Ohio Criminal Rule 51, which is a relic from prior times, would not have featured prominently in her legal education.  The Rule in its present form was part of the Ohio Rules of Criminal Procedure as originally effective July 1, 1973.  It used to be the practice that, whenever a judge ruled on an objection at trial, the attorney whose client was adversely affected by the ruling was required to register an exception to the ruling.

Black's Law Dictionary (9th ed.) reports that an exception is "A formal objection to a

---

[1] From her firm's website at ww.kurawilford.com, visited January 28, 2014.

court's ruling by a party who wants to preserve an overruled objection or rejected proffer for appeal. . . .  In most courts, an exception is no longer required to preserve the initial objection." Black's in turn quotes Wigmore:

> The exception serves an entirely distinct purpose from the objection, -- a double purpose, in fact.  It warns the judge and the other party that the exceptor is not satisfied with the ruling and takes issue with a view to appeal; and it sums up and preserves the precise terms of the ruling.

John H. Wigmore, A Student's Textbook of the Law of Evidence 421 (1935).  Gioanelli and Snyder report that Ohio R. Evid. 103, "[b]y omitting any reference to the common law requirement of 'excepting' to the trial court's ruling, Rule 103 follows prior Ohio law" and then recite Ohio R. Crim. P. 51.  Paul Gianelli and Barbara Snyder, Evidence § 103.4 (1996).

These authorities reflect the distinction between objecting and taking exception to a ruling dealing with the objection.  Ohio R. Crim. P. 51 was intended to canonize abolition of the exception requirement in Ohio practice and has no relevance to the rule relied on by the court of appeals in this case about renewing an objection to joinder at trial.

Howard relies on Judge Gwin's opinion in *Hoffner v. Bradshaw*, 2008 U.S. Dist. LEXIS 123834 at *104 (N.D. Ohio 2008), for the proposition that a pre-trial objection to the standard Ohio reasonable doubt jury instruction will preserve that objection for habeas review without a contemporaneous objection at the time the instruction is delivered.  He opines that, by virtue of Ohio R. Crim. P. 51, "the Ohio appellate courts erred in finding that the Petitioner waived this claim. . . ." *Id.*  Judge Gwin cites no Ohio case law to that effect.

The Sixth Circuit has held that a federal reviewing court is generally bound by state court interpretations of state law. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v.*

*Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")*, Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005)*; Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

In sum, Ohio has a rule that was enforced against Howard, to wit, that an objection to joinder made pre-trial must be renewed at trial.  This rule is independent of federal law.  Its adequacy is supported by the same reasons which support the adequacy of the contemporaneous objection rule, to wit, the need to correct error when it can be corrected without harm to the case which can only be cured on appeal.

When it has been shown that a habeas petitioner has procedurally defaulted a constitutional claim, he or she can overcome the default by demonstrating cause and prejudice. *Maupin, supra.*  Petitioner has attempted to do that by claiming it was ineffective assistance of trial counsel for his attorney not to renew the objection at trial.  Howard argues "Had counsel properly renewed his objection, there is a reasonable likelihood sufficient to undermine the outcome for Mr. Howard, that the issue would have prevailed or at a minimum [been] properly preserved for appeal." (Reply, Doc. No. 13, PageID 2216.)  Howard is certainly correct that the issue would have been preserved for appeal if the objection had been renewed at trial:  absence of that objection was the very basis for the court of appeals' denying the First Assignment or Error.  But Howard has not shown he would have been any more likely to prevail either at trial or on appeal on this issue had the objection been renewed at trial.  The issue had been thoroughly vetted before Judge Myers before trial and Howard does not now point to anything he could have

presented at the time of trial which would have been likely to change her mind.  The court of appeals expressly held that, because joinder was appropriate, Howard suffered no prejudice from his attorney's failure to renew the objection.  *Howard, supra*, ¶ 69.

The Court concludes Howard procedurally defaulted on his First Ground for Relief and the default is not excused by ineffective assistance of trial counsel.


### Merits of the First Ground


For completeness sake, the Magistrate Judge offers the following analysis of the merits of the First Ground for Relief.

The court of appeals decided the misjoinder claim despite the procedural default and concluded Howard had not proven prejudice from the joinder.  *Howard, supra,* ¶¶ 14-19. Howard asserts that this Court must review *de novo* his constitutional misjoinder claim.  (Reply, Doc. No. 13, PageID 2211).  That is not so.  When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  If we were not to treat the court of appeals' decision as made on the merits of this constitutional claim, Howard would face the additional procedural default barrier of lack of fair presentation.  Although the court of appeals cited only state case law in making its decision, the

facts relied in both there and here are an "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and [or] allegation of a pattern of facts well within the mainstream of constitutional litigation." *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987); *accord*, *Whiting v. Birt*, 395 F.3d 602 (6th Cir. 2005); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).

To prevail on the merits, a habeas petitioner must show that the state court decision is contrary to or an unreasonable application of Supreme Court precedent. In the course of arguing this claim in the Reply, Howard cites no Supreme Court precedent at all (Reply, Doc. No. 13, PageID 2211-15.)

Respondent relies on *Spencer v. Texas*, 385 U.S. 554 (1967), where the Supreme Court permitted the State to try in one proceeding a particular charge and the habitual offender charge which would be appropriate upon conviction of the underlying charge, despite the risk of prejudice, noting that the jury is expected to follow instructions limiting consideration of evidence to the relevant offense and that the convenience of trying different crimes against the same person is a valid governmental interest. *Id.* at 562. The holding in *Spencer* was reaffirmed in *Marshall v. Lonberger*, 459 U.S. 422 (1983).

More directly in point is *Davis v. Coyle,* 475 F. 3d 761 (6th Cir. 2007), where the court held:

> In considering whether the denial of severance amounted to an error warranting relief in a habeas proceeding, the issue before us is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment. *See Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980). In other words, in order to obtain federal habeas relief on this claim involving state law, Davis must show that misjoinder

> of the counts "result[ed] in prejudice so great as to deny a defendant his . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986).
>
> Without question, a risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible. *See*, *e.g.*, *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998). By allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges [sic]. *See Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998).

*Id.* at 777.  In this case the court of appeals noted that Howard's crimes came within the "course of conduct" provision in Ohio R. Crim. P. 8.  Moreover, the criminal offenses within that course of conduct comprised separate and distinct incidents unlike, for example, when the overt acts underlying a conspiracy charge are tied together by the conspiracy allegations.  Howard argues the evidence was not simple and distinct, but points to the prosecutor's arguments rather than the evidence itself (Reply, Doc. No. 13, PageID 2212-13.  Finally, the trial judge gave an appropriate limiting instruction to the jury.  The fact that the jury found Howard not guilty of one of the four charged murders shows they were capable of keeping the evidence separate.

The First Ground for Relief is procedurally defaulted.  Alternatively, on the merits, the Ohio court of appeals' decision is neither contrary to nor an objectively unreasonable application of relevant Supreme Court precedent.


**Ground Two:  ineffective Assistance of Trial Counsel**


In his Second Ground for Relief, Howard asserts he received ineffective assistance of

trial counsel in three ways:  (1) failure to renew the joinder objection, (2) failure to object to the

State's Criminal Rule 16 violation, and (3) failure to object to admission of the firearm (Reply,

Doc. No. 13, PageID 2216-19).

The governing standard for ineffective assistance of counsel is found in *Strickland v.*

*Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence
> has two components.  First, the defendant must show that counsel's
> performance was deficient.  This requires showing that counsel
> was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.  Unless a
> defendant makes both showings, it cannot be said that the
> conviction or death sentence resulted from a breakdown in the
> adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly
> deferential. . . .  A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of counsel's challenged
> conduct, and to evaluate the conduct from counsel's perspective at
> the time.  Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that
> counsel's conduct falls within a wide range of reasonable
> professional assistance; that is, the defendant must overcome the
> presumption that, under the circumstances, the challenged action
> "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

14

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

As with other federal constitutional claims, when a claim of ineffective assistance of trial counsel has been decided by the state courts, the federal habeas court is obliged to defer under AEDPA unless the state court's conclusion are contrary to or an objectively unreasonable application of clearly established Supreme Court precedent.

> When evaluated under § 2254(d), a court's review of a *Strickland* claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). The state court's own *Strickland* analysis must receive the benefit of the doubt, and "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788, 178 L. Ed. 2d 624 (2011).

*Washington v. McQuiggin*, 2013 U.S. App. LEXIS 14165 (6th Cir.  2013).

As to the failure to renew the misjoinder claim, the court of appeals found no resulting prejudice because the joinder was not improper.  Under *Strickland*, it is perfectly appropriate to consider the prejudice prong first.  For the reasons given above under Ground One, the state court's opinion on this portion of the ineffective assistance of trial counsel claim is not objectively unreasonable.

As to the claim relating to pre-trial disclosure of plea agreements, the court of appeals was unpersuaded that the later disclosure had in fact violated Ohio Crim. R. 16.  *Howard, supra*.,

¶ 70.  It also found there was no prejudice because Howard's counsel was able to thoroughly question Eugene and Carlos Jackson about the contents of their plea agreements.  *Id.*  Howard makes verbatim the same argument here as he made in his Brief on Appeal (Compare Reply, Doc. No. 13, PageID 2217, with Reply Brief on Direct Appeal, Return of Writ, Doc. No. 8-1, Ex. 23, PageID  292-93.)  He offers no explanation of why the court of appeals would have been wrong in finding no violation of Rule 16, no complaint that his counsel was not able to thoroughly cross-examine these witnesses, and no further argument on prejudice.  This sub-claim is without merit.

Howard also argues his attorney should have objected to admission of the firearm (Reply, Doc. No. 13, PageID 2217-18.)  The court of appeals also considered this issue and held:

> [**P71**] Last, Howard argues that his counsel was ineffective for failing to object to the admission of a firearm that was allegedly used in the murder of Gino Booker. During trial, the state admitted into evidence a nine-millimeter gun that was found near the Booker murder scene. The state additionally admitted into evidence shell casings from a nine-millimeter gun that were found at the scene. And the state presented testimony from a firearms examiner that these casings came from the nine-millimeter gun. This evidence was relevant to the state's case, and counsel was not deficient for failing to object to its admission.

*Howard, supra*, ¶ 71.  Howard's relevance argument on this point is difficult to understand.[2] Shell casings found at the scene were tied to this nine-millimeter weapon found nearby.  Howard asserts this is an "extremely common weapon . . . found in a high-crime area."  (Reply, PageID 2218).  That sounds more like an authenticity argument than a relevance argument.  In any event, Howard provides no proof for the notion that the firearm would have been excluded on relevance

---

[2] Here again the argument in the Reply in habeas is a verbatim copy of the argument in the Reply Brief on direct appeal.  Compare Doc. No. 13, PageID 2217-18 with Doc. No. 8-1, PageID 294.

grounds if the objection had been made.

Because it is not deficient performance to fail to object to the admission of relevant evidence, this sub-claim is without merit.  The Second Ground for Relief as a whole is without merit.

**Ground Three:  Reliability Determination**

In his Third Ground for Relief, Howard asserts he was deprived of due process of law when the testimony of Eugene and Carlos Jackson was admitted against him without the trial court's conducting a reliability hearing.  The First District Court of Appeals considered this argument as Howard's seventh assignment of error on direct appeal and rejected it.  *Howard, supra,* ¶¶ 41-46.

In his Reply in this Court, Howard has cited no United States Supreme Court precedent even remotely suggesting that a "reliability hearing" is constitutionally compelled when the State proposes to introduce the testimony of co-perpetrators who have received sentencing reductions for their agreement to testify.  The one case cited is *Kumho Tire Co. v. Carmichael*, 526 U.S.137, 152 (1999), which speaks to the admissibility of expert testimony under Fed.  R. Evid.  702. Kumho was an elaboration on the standard for expert testimony adopted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  While the Supreme Court has suggested in the *Daubert* line of cases that a reliability hearing is useful, it held in *Kumho Tire* that it was not mandatory, much less compelled by the Constitution.

Nor has Howard offered any Supreme Court precedent which holds that testimony of this

type is *per se* inadmissible.  The dangers of co-defendant testimony are well known, but the court of appeals' rejection of this claim where the co-perpetrators were vigorously cross-examined and the jury was given a strong cautionary instruction is neither contrary to nor an objectively unreasonable application of Supreme Court precedent.  The Third Ground for Relief is without merit.

**Ground Four:  Conviction Upon Insufficient Evidence**

In his Fourth Ground for Relief, Howard asserts he was convicted on insufficient evidence.  The Warden concedes has been preserved for merit determination in this Court.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132,

110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to
> groups who might view facts differently than we would. First, as in
> all sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781,
> 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the
> evidence, re-evaluate the credibility of witnesses, or substitute our
> judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d
> 618, 620 (6th Cir. 1993). Thus, even though we might have not
> voted to convict a defendant had we participated in jury
> deliberations, we must uphold the jury verdict if any rational trier
> of fact could have found the defendant guilty after resolving all
> disputes in favor of the prosecution. Second, even were we to
> conclude that a rational trier of fact could not have found a
> petitioner guilty beyond a reasonable doubt, on habeas review, we
> must still defer to the state appellate court's sufficiency
> determination as long as it is not unreasonable. See 28 U.S.C. §
> 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

*Palmer*, 541 F.3d 652 (6th Cir. 2008).

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

The court of appeals considered this claim on direct appeal and found merit in it with respect to the Kevin Redding. *Howard, supra,* ¶26. As to the remaining convictions, the court found as follows:

> **[*P29]** We now consider whether Howard's convictions stemming from the criminal incident culminating in the homicide of Gino Booker were supported by sufficient evidence. Howard was found guilty of the aggravated murder and aggravated robbery of Gino Booker and of having a weapon while under a disability.

> **[*P30]** The jury was instructed that, to find Howard guilty of the aggravated robbery of Gino Booker, it had to find beyond a reasonable doubt that, in committing the theft of marijuana from Booker, Howard had a deadly weapon on or about his person and had displayed that weapon. And to find Howard guilty of the aggravated murder of Booker, the jury was instructed that it had to find that Howard had purposely caused the death of Booker while committing the offense of aggravated robbery, which was defined as the theft of marijuana from Booker.

> **[*P31]** Carlos Jackson testified that Howard shot Booker after Booker had attempted to retrieve marijuana that Howard had taken from him. And Eugene Jackson witnessed Howard reveal a gun, heard two gunshots, and saw Booker collapse. Viewing this

evidence and all the other evidence adduced at trial in the light most favorable to the state, we conclude that the state presented sufficient evidence to support Howard's convictions for both the aggravated robbery of Booker pursuant to R.C. 2911.01(A)(1) and the aggravated murder of Booker pursuant to R.C. 2903.01(B).

[*P32] Howard was additionally found guilty of having a weapon while under a disability, which is governed by R.C. 2923.13. R.C. 2923.13(A)(3) states that "[u]nless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." Howard had stipulated that he been convicted of drug abuse and had not been relieved from that disability. His conviction for having a weapon while under a disability was supported by sufficient evidence.

[*P33] We now turn to Howard's convictions stemming from the criminal incident that culminated in the homicide of Tim Canady. As we have stated, Howard was found guilty of the aggravated murder, aggravated robbery, and kidnapping of Canady, the aggravated burglary of Krystal White's residence, the aggravated kidnapping of Sakinah Malik, the aggravated burglary of Malik's residence, and having a weapon while under a disability.

[*P34] We have previously defined these offenses, with the exception of aggravated burglary. The aggravated-burglary charges in this case were governed by R.C. 2911.11(A)(2), which provides in relevant part that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense * * * if [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

[*P35] With respect to the offense of aggravated murder, the jury was instructed that, to find Howard guilty of this offense, it had to find beyond a reasonable doubt that Howard had purposely caused the death of Canady while committing the offense of aggravated robbery and/or kidnapping. Aggravated robbery was defined in relevant part as the theft of marijuana from Tim Canady. And kidnapping was defined as the removal or restraint of Canady for the purpose of committing aggravated robbery. These definitions

applied to each of the charged offenses stemming from this criminal incident, with the exception of the kidnapping charge relating to Sakinah Malik. That offense charged that Howard had removed or restrained Malik for the purpose of committing aggravated robbery, which was also defined in relevant part as the theft of marijuana from Canady.

[*P36] Carlos Jackson testified that Howard had entered White's residence without permission, had restrained the home's occupants with cords, had handcuffed Canady and driven him around the area in his van, and had shot him in the head after taking his marijuana. Sakinah Malik testified that two armed men had forced their way into her apartment, restrained her with a phone cord, and taken Canady's supply of marijuana. Eugene Jackson corroborated this testimony, stating that an armed Howard had taken Canady's supply of marijuana and shot Canady in the head.

[*P37] Viewing this evidence in the light most favorable to the prosecution, we hold that it was sufficient to support Howard's convictions stemming from this criminal incident.

*Howard, supra*, ¶¶ 29-37.

Petitioner's argument in his Reply is that there was no physical evidence and Eugene Jackson was not believable because "it is likely he would have testified against his mother to receive a free pass on four homicides." (Doc. No. 13, PageID 2222.)  These are credibility arguments which Howard made to the jury which the jury rejected.  A federal habeas court is not authorized to second-guess a jury which has heard thorough cross-examination raising the credibility issues.  The Fourth Ground for Relief should be dismissed.


**Ground Five:  Double Jeopardy**


In his Fifth Ground for Relief, Howard asserts that his convictions on multiple counts of aggravated murder, aggravated robbery, and kidnapping violate his rights under the Double

Jeopardy Clause.

Howard did not raise a Double Jeopardy claim in his direct appeal. He instead asserted that he was improperly sentenced on allied offenses of similar import in violation of Ohio's multiple count statute, Ohio Revised Code § 2941.25. Respondent does not raise a lack of fair presentation defense (Return of Writ, Doc. No. 8, PageID 57-64). Instead, the Warden argues that the court of appeals decision on the allied offenses claim determines legislative intent with respect to the offenses involved and thus precludes any Double Jeopardy violation.

The First District decided the allied offenses claim as follows:

> [*P47] In his second assignment of error, Howard argues that the trial court erred by sentencing him on allied offenses of similar import that were subject to merger pursuant to R.C. 2941.25.

> [*P48] Under R.C. 2941.25, Ohio's multiple-count statute, a trial court may convict and sentence a defendant for two or more offenses "'having as their genesis the same criminal conduct or transaction,'" if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Bickerstaff* (1984), 10 Ohio St. 3d 62, 65-66, 10 Ohio B. 352, 461 N.E. 2d 892, quoting *State v. Moss* (1982), 69 OhioSt. 2d 515, 433 N.E. 2d 181. See also, *State v. Johnson*, 128 Ohio St. 3d 153, 2010 Ohio 6314, 942 N.E. 2d 1061, ¶ 51, and *State v. Evans,* 1st Dist. No. C-100028, 2011 Ohio 2356.

> [*P49] The Ohio Supreme Court recently changed the analysis to be applied in allied-offense cases in *State v. Johnson*, supra 2010 Ohio 6314. In *Johnson*, the court abandoned the previous test established in *State v. Rance,* 85 Ohio St. 3d 632, 1999 Ohio 291, 710 N.E. 2d 699 that required courts to compare elements of the offenses in the abstract. The court overruled *Rance* and held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson,* supra, syllabus. Following *Johnson*, if the evidence presented at trial reveals that the state relied upon the same conduct to support both offenses, and that the offenses were neither committed separately

nor with a separate animus as to each, then the defendant is afforded the protection of R.C. 2941.25, and the trial court errs in imposing separate sentences for both offenses. *Id.* at ¶ 51, R.C. 2941.25.

[*P50] In this case, Howard argues that the offenses of aggravated murder, aggravated robbery, and kidnapping were allied offenses of similar import subject to merger. R.C. 2903.01 governs the offense of aggravated murder. As relevant to this case, R.C. 2903.01(B) provides that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit * * * kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape."

[*P51] R.C. 2911.01 governs the offense of aggravated robbery. R.C. 2911.01(A)(1) provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall [h]ave a deadly weapon on or about the offender's person." The kidnapping offenses in this case were governed by R.C. 2905.01(A)(2). This statute provides that [n]o person by force, threat, or deception * * * shall remove another from the place where the other is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter."

[*P52] We first consider the offenses of aggravated murder and aggravated robbery. Howard argues that these offenses are subject to merger as they relate to his convictions for offenses against both Gino Booker and Tim Canady. Prior to *Johnson*, the law was well settled that aggravated felony murder was not an allied offense of similar import to the underlying charged felony. *See State v. McCoy, supra,* 2010 Ohio 5810, ¶ 62. *See, also, State v. Keene,* 81 Ohio St. 3d 646, 668, 1998 Ohio 342, 693 N.E. 2d 246.   But following *Johnson*, courts must now reconsider this issue.

[*P53] We first examine Howard's convictions with respect to Gino Booker. The record indicates that Howard had taken Booker's marijuana, refused to return it, and brandished a gun in response to Booker's efforts to retrieve the drugs. Unable to recover his drugs, Booker reached for the gun and was shot by Howard. We determine that Howard's convictions for the aggravated murder and the aggravated robbery of Gino Booker were not subject to merger pursuant to R.C. 2941.25(B) because, despite the close

24

temporal connection, they were committed separately and with a separate animus.

[*P54] The aggravated robbery of Howard was complete when an armed Howard took Booker's drugs and refused to return them. Following the completion of the robbery, Howard then shot Booker. These offenses were committed separately.

[*P55] With respect to animus, we note that aggravated murder requires proof of the specific purpose to kill. See R.C. 2903.01(B). After robbing Booker, Howard purposefully chose to kill him. The murder was in fact so unnecessary for the robbery itself that it demonstrated a significant independence from that robbery.  See *State v. Shields*, 1st Dist. No. C-100362, 2011 Ohio 1912, ¶ 19. Here, Howard's actions evinced a separate animus for the aggravated murder, namely a specific purpose to kill that was not present for the commission of aggravated robbery. We accordingly conclude that Howard's convictions for the aggravated murder and aggravated robbery of Gino Booker were separately punishable under R.C. 2941.25(B).

[*P56] We now consider Howard's convictions for the aggravated murder and the aggravated robbery of Tim Canady. We determine that these offenses were clearly committed as separate acts and that the state did not rely on the same conduct to prove each of these offenses. Howard committed aggravated robbery by taking Canady's marijuana from Sakinah Malik's apartment. Canady was not present for the robbery. Howard then returned to the location where he had kept Canady restrained, and he purposely murdered Canady. As these offenses were committed separately, the trial court properly imposed a sentence for each offense.

[*P57] We next consider whether the offenses of aggravated murder and kidnapping committed against Tim Canady were allied offenses of similar import. And because these offenses were committed with a separate animus, they were not subject to merger. In *State v. Logan*, the Ohio Supreme Court established guidelines to determine whether the offense of kidnapping and a separate offense were committed with the same animus.  State v. Logan (1979), 60 Ohio St. 2d 126, 397 N.E. 2d 1345, syllabus. The *Logan* court held that "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is

secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." *Id.*

[**P58**] In this case, Howard handcuffed Canady, removed him from Krystal White's home against his will, confined him to a van, and drove him around for a substantial period of time. Howard kept Canady restrained while he committed the aggravated robbery of Canady's marijuana. Only after this aggravated robbery was committed did Howard murder Canady. Clearly, the restraint of Canady was prolonged and substantial, and was not merely incidental to the aggravated murder. As these offenses were committed with a separate animus, the trial court properly imposed a sentence for each offense.

[**P59**] Last, we consider whether aggravated robbery and kidnapping were allied offenses of similar import. Howard raises this argument with respect to crimes committed against Tim Canady. As we have stated, the kidnapping of Canady was substantial and prolonged. It continued for a lengthy period of time before the aggravated robbery was committed, and it was not merely incidental to the aggravated robbery. We determine that these offenses were committed with a separate animus and were not subject to merger pursuant to R.C. 2941.25(B).

[**P60**] In summary, the trial court properly imposed sentence on all offenses, and none of Howard's convictions involved allied offenses of similar import subject to merger pursuant to R.C. 2941.25. The second assignment of error is accordingly overruled. [Footnote omitted.]

*Howard, supra*, ¶¶ 47-60.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other."  *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985). *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.")  The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself.  *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*.  "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).  As noted above, the Warden argues the court of appeals determination of the allied offenses claim is dispositive of the Double Jeopardy claim in Ground Five.

Howard replies that "[t]he state court's analysis that the two crimes [of aggravated robbery and aggravated murder of Gino Booker] were committed with separate animus 'despite the close temporal connection' is unreasonable. . . .  The aggravated robbery charge in Count 2 was the basis for the aggravated murder charge in Count 5."  (Reply, Doc. No. 13, PageID 2223-

34.)

Howard does not argue what is unreasonable about that decision. If his point is that the First District has unreasonably interpreted Ohio Revised Code § 2941.25, this Court is nevertheless bound by that interpretation. *Volpe, supra.* Alternatively, he may be arguing that the First District's decision is "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," which states a claim we can review under 28 U.S.C. § 2254(d)(2).

The First District's findings of fact were that Howard took Booker's marijuana and brandished a gun to keep Booker from taking the marijuana back. *Howard, supra*, ¶ 53. Booker then reached for the gun and Howard shot him. *Id.* While these events happened in a continuous sequence and in a very short period of time, the court of appeals' analysis makes sense to this Court. Howard did not shoot Booker first in order to disable him from protecting his marijuana. Instead, Howard took the marijuana and then decided to kill Booker for trying to take it back or to prevent him from taking it back. The aggravated robbery was complete before Howard formed the intent/made the decision to kill Booker. *Id.* ¶¶ 54-55.

The other branch of Howard's Double Jeopardy claim relates to the convictions and punishments for aggravated robbery, kidnapping, and aggravated murder arising out of the death of Tim Canady. Howard argues:

> Further with regard to the charges involving Tim Canady, in Count 4, Petitioner could not have been found guilty of aggravated murder without committing the offense of aggravated robbery in Count 5 and the offense of kidnapping in Count 8. He could not have been found guilty of kidnapping Tim Canady without committing the underlying offense of aggravated robbery. The appellate court's finding was contrary to and involved an unreasonable application of clearly established federal law.

28

(Reply, Doc. No. 13, PageID 2224.)

This argument is pure *ipse dixit.* Howard cites no clearly established federal law of which this is supposedly an unreasonable application. Indeed, he cites no federal law at all in this argument. Upon examination of the Indictment, it is correct that Howard could not have been convicted of aggravated murder in the death of Canady without proof that the murder had been committed "while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit the offense of aggravated robbery and/or kidnapping. . . ." (Indictment, Return of Writ, Doc. No. 8-1, PageID 78). Contrary to Howard's argument, a guilty finding on either aggravated robbery or kidnapping would have been sufficient because the Indictment is phrased in the alternative and either offense is one of the felonies contemplated in the aggravated murder statute. The court of appeals explained how the robbery was committed with a separate animus from the murder: Howard took Canady's marijuana from Malik in an aggravated robbery. *Howard, supra*, ¶ 56. Only then did he return to the location of the restrained Canady and kill him. *Id.* As to the independence of the kidnapping and robbery, the court of appeals applied the factors for evaluating that separateness which have been approved by the Ohio Supreme Court; the determination is reasonable in light of those factors.

Ground Five should be dismissed with prejudice.


**Conclusion**


Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion,

Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

January 31, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).